IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| HYDRO-KLEAN, LLC, | ) | Case No. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **PETITION AND REQUEST FOR** |
| | ) | **INJUNCTIVE RELIEF** |
| JOHN CASSIDY, | ) | |
| | ) | |
| Defendant. | ) | |

COMES NOW the Plaintiff, Hydro-Klean, LLC ("HK"), by and through the undersigned counsel, and for its Petition and Request for Injunctive Relief states as follows:

**SUMMARY**

1. Defendant John Cassidy ("Cassidy") was employed by Plaintiff, HK, from April 20, 2020, until December 22, 2020. Just prior to Cassidy's departure from HK and in violation of an Agreement Not to Compete (the "Agreement") executed by Cassidy, he sent from his HK email address to his personal email address HK proprietary trade secret materials as well as customer leads. Upon Cassidy's departure from HK, Cassidy retained a laptop distributed by HK and refused to return the computer, despite HK's request for him to do so. Shortly thereafter, HK learned Cassidy was performing work for a HK client in violation of the Agreement. A copy of the Agreement is attached hereto as Exhibit A. HK seeks temporary and permanent injunctive relief, among other remedies, to seek a return of HK's property, to protect against further breaches, and to protect against Cassidy's continued use of HK's proprietary trade secret material.

## PARTIES AND JURISDICTION

2. Plaintiff HK is an Iowa corporation with its principal place of business in Polk County, Iowa.

3. Defendant Cassidy resides in Missouri, and he is a former HK employee.

4. This Court has personal jurisdiction over Cassidy because while employed at HK, Cassidy repeatedly engaged in business in Iowa and availed himself of the protections of Iowa law. For example, Cassidy had consistent contact with other HK employees in Iowa; Cassidy utilized technology housed in Iowa or developed in Iowa (e.g., HK's servers, certain proprietary tools, etc.); Cassidy received payment from HK's Des Moines office; Cassidy misappropriated trade secrets that were created in Iowa; Cassidy attended work-related events in Iowa; Cassidy did business with customers in Iowa; and Cassidy otherwise interacted on a daily basis with HK's Iowa offices. In fact, in the Agreement, Cassidy agreed to be bound by Iowa law.

5. This Court has subject matter jurisdiction because the amount in controversy exceeds the jurisdictional minimum for this Court and HK is seeking injunctive relief.

## FACTS

6. HK offers, among other things, professional services relating to industrial air and dust filters throughout the country. Part of these services include "BagHouse Services," where HK employees inspect, clean, and service industrial baghouse systems.

7. In addition to its main office in Des Moines, HK maintains offices in Wausau, Wisconsin, Kansas City, Missouri, and DeLand, Florida, among other locations. Such offices existed while Cassidy was employed at HK.

8. HK's business depends on maintaining relationships between and among its employees and clients.

9. HK hired Cassidy as its Business Development Director for BagHouse Services. Upon his hire, HK and Cassidy entered into the Agreement, which is governed by Iowa law.

10. Cassidy was responsible for obtaining business for HK's BagHouse Services division, including obtaining business from companies in Iowa and providing services to companies in Iowa.

11. The Agreement between Cassidy and HK contained a non-compete provision stating:

> [D]uring the term of [Cassidy's] employment with [HK] and for a period of two (2) years thereafter, whether the employment is terminated by [HK], by [Cassidy], or by mutual consent, [Cassidy] shall not, directly or indirectly, individually or as a partner, shareholder, principal, employee, agent, officer, director, investor, manager, trustee, solicitor, representative, counsel, or in any other capacity participate or engage in, become associated with, or render services to any business competing with the business of [HK] within the Restricted Area (as that term is defined below).

12. The Agreement defined the "Restricted Area" as: "the area within a radius of two hundred (200) miles from all Hydro-Klean, LLC. Corporation offices, including … any … offices opened during the term of [Cassidy's] employment."

13. The Agreement explained: "[Cassidy] acknowledges and agrees that the geographical area of the Restricted Area for purposes of this Agreement is necessary and appropriate to protect the justifiable business interests of [HK]" and that HK "would not have agreed to offer employment" without such limitations.

14. Cassidy further acknowledges in the Agreement that "the covenants contained herein are reasonable and consistent with the rights of [HK] to protect its business."

15. The Agreement further states:

> [Cassidy] acknowledges and agrees that, in the view of [Cassidy] and [HK], all trade secrets, know-how, record, customer lists, techniques, methods and procedures for the operation of [HK's] business, forms and other information obtained or developed by [Cassidy] in the course of [his] employment with [HK] are confidential and are the exclusive property of [HK]. Inasmuch as [Cassidy] will, during the course of [his] employment with [HK], receive from [HK] or otherwise obtain such confidential information, [Cassidy] agrees that [he] shall not, during the term of [his] employment, retain or make copies of, disclose, use or remove from the office of [HK], any such trade secrets, methods, systems, customer lists or other information concerning the business of [HK], except that which is necessary and required in [Cassidy's] employment. Upon termination of [his] employment for any reason … [Cassidy] agrees not to retain, use, disclose, furnish, or make accessible any of the foregoing information, forms or other documents to any person, firm or entity for any purpose or reason except as expressly allowed in writing by [HK].

16. On December 14, 2020, Cassidy sent from his HK email address to his personal email address an email sent to him by Wade Anderson, HK's CEO, on September 1, 2020, entitled "TEMPLATE – Baghouse Calculator.xls" along with a Microsoft Excel attachment, entitled "TEMPLATE – Baghouse Calculator.xls." This Excel attachment contained HK's pricing tool for BagHouse Services. This tool was created by HK employees in Iowa, and it was sent by Mr. Anderson, who works in HK's Des Moines office.

17. On December 10, 2020, Cassidy sent from his HK email address to his personal email address a copy of an email from a representative of Schenk Properties, a Whitewater, Wisconsin-based company, requesting a quote for BagHouse Services.

18. Whitewater, Wisconsin is within 200 miles of HK's Wausau, Wisconsin, corporate office, which existed while Cassidy was employed at HK.

19. Upon information and belief, Cassidy sent additional proprietary information and customer requests to his personal e-mail or otherwise retained information relating to HK for his own personal benefit.

20. Shortly after forwarding himself these emails, Cassidy terminated his employment at HK, on December 22, 2020.

21. Upon information and belief, Cassidy used a corporate credit card to order items that he kept for his own personal use and for future business.

22. Cassidy also retained possession of a HK-owned and sanctioned laptop, which contains HK confidential and proprietary information, including software purchased by HK for Cassidy's use at HK.

23. On January 21, 2020, Matthew Rehard, a former HK employee and current representative of Industrial Accessories Company ("IAC"), based in Mission, Kansas, sent to Cassidy's old HK email address an update on a project he and Cassidy are, at the time of this Petition, currently undertaking.

24. Mission, Kansas, is within 200 miles of HK's Kansas City corporate office, which existed at the time Cassidy was employed with HK.

25. Upon information and belief, Cassidy is doing business with IAC and Schenk Properties, including managing and/or participating in BagHouse Services for these companies.

26. Upon information and belief, HK customers have chosen to do business with Cassidy and/or companies associated with Cassidy rather than engage HK for these services.

27. Armed with HK's proprietary pricing calculator and other information, Cassidy is able to determine the price HK would bid on a project and ensure that he or companies with whom he is associated can present bids for BagHouse Services.

28. It is very difficult, and sometimes impossible, to bring customers back after they choose to do business with a competitor. This is especially true when a competitor possesses a

company's pricing information and can undercut the company's prices as well as utilize the company's other proprietary information.

29. HK is at risk of irreparable harm if Cassidy is allowed to continue soliciting HK customers, utilizing HK's proprietary information, and actively competing with HK.

## COUNT I:  BREACH OF CONTRACT

30. HK realleges paragraphs 1 through 29 as though set forth fully herein.

31. HK has a valid and enforceable Agreement prohibiting Cassidy from (a) competing with HK within a 200-mile radius of HK's corporate office locations and (b) retaining and using HK's property and proprietary information.

32. HK has fully performed under the Agreement by, among other things, employing Cassidy and providing him with access to customers, customer information, HK property, and HK's proprietary information, including pricing calculators and customer leads.

33. Cassidy has breached and continues to breach the Agreement by competing with HK within a 200-mile radius of HK's corporate office locations, by retaining HK's proprietary information, by retaining HK's property, and otherwise by engaging in improper conduct.

34. The Agreement states:

> [Cassidy] agrees that in the event of an actual or threatened breach by [Cassidy] of any such covenant, [HK] would be irreparably harmed and the full extent of injury resulting from the breach would be impossible to calculate, leaving [HK] without an adequate remedy at law. [Cassidy] agrees, therefore, that the following remedies are warranted in the event of a breach:
>
> a. Temporary and permanent injunctive relief … without bond or security; provided, that nothing herein shall be construed as limiting any other legal or equitable remedy available to [HK] for such breach.
> b. In the event [HK] is required to retain an attorney to enforce the terms of this Agreement, [Cassidy] shall be liable for all attorney's fees and costs incurred by [HK] in enforcing this Agreement.

  c. In the event [Cassidy] breaches this Agreement, the term set forth in paragraph 1 [of two years] shall be extended by the length of any breach including the time spent enforcing this Agreement.

35. As a result of Cassidy's breaches, HK has suffered monetary harm in an amount to be proven at trial as well as irreparable harm.

WHEREFORE, HK respectfully requests that the Court enter judgment in its favor, awarding:

  i) Temporary and permanent injunctive relief;

  ii) An extension as to the duration of Cassidy's non-compete obligations;

  iii) Actual damages in an amount to be proven at trial;

  iv) The costs of this action;

  v) Reasonable attorneys' fees; and

  vi) Such other and further relief as the Court deems appropriate.

## COUNT II:  MISAPPROPRIATION OF TRADE SECRETS

36. HK restates paragraphs 1 through 35 of this Petition as though set forth fully herein.

37. Cassidy misappropriated information belonging to HK that derives independent economic value from not generally being known to, and not readily ascertainable through proper means by, other persons who can obtain economic value from its disclosure and use.

38. Cassidy misappropriated, at a minimum, HK's pricing calculator, allowing Cassidy to predict HK's pricing related to various bids.

39. Upon information and belief, Cassidy misappropriated other information, such as customer leads and other information on an HK laptop.

40. HK used reasonable means to maintain confidentiality of the misappropriated information, including, *inter alia*, through the use of password-protected systems and the Agreement with Cassidy and similar agreements with other former and current employees.

41. Cassidy has used and intends to continue to use the misappropriated information to his own advantage and the advantage of certain companies associated with him.

42. To the extent Cassidy is employed with any company, Cassidy's use of the misappropriated information is imputed to Cassidy's new company.

43. The misappropriated information constitutes trade secret information under Iowa Code § 550.2.

44. The actions of Cassidy have caused and will continue to cause monetary damages and irreparable harm to HK for which monetary damages alone will be an inadequate remedy.

45. Cassidy's are willful and malicious, entitling HK to an award of exemplary damages under Iowa Code § 550.4(2).

46. HK is entitled to recover attorney's fees in pursuing this action pursuant to Iowa Code § 550.6.

47. Cassidy will cause irreparable injury to HK if he is not immediately enjoined from continuing disclosure and use of HK's confidential information.

WHEREFORE, HK respectfully requests that the Court enter an order in its favor and against Cassidy as follows:

i) awarding HK compensatory and exemplary damages under Iowa Code Chapter 550;

ii) requiring the return of HK's trade secret information;

iii) enjoining further use or disclosure of HK's trade secret information;

    iv)    awarding HK pre-judgment and post-judgment interest;

    v)    awarding HK the costs and attorney's fees incurred in this action; and

    vi)    awarding all other relief as the Court deems just.

## COUNT III:  TEMPORARY AND PERMANENT INJUNCTIVE RELIEF

48.    HK restates and realleges paragraphs 1 through 47 of this Petition as though set forth fully herein.

49.    The actions of Cassidy have caused, and will continue to cause, irreparable harm to HK for which monetary damages alone will be an inadequate remedy.

50.    Among other things, the actions of Cassidy have damaged, and will continue to damage, HK's relationships with its customers.  The balance of harms is substantially greater to HK than to Cassidy.

51.    The Agreement explains the enforcement of the Agreement "will not prevent [Cassidy] from earning a living."

52.    Public policy does not favor allowing employees who signed agreements containing reasonable covenants not to compete to violate those covenants and otherwise misappropriate their former employer's trade secrets.

WHEREFORE, HK respectfully requests that the Court enter temporary and permanent injunctive relief in its favor against Cassidy as follows:

    i)    Prohibiting Cassidy from conducting business within a 200-mile radius of HK's corporate office locations;

    ii)    Prohibiting Cassidy from directly or indirectly providing any service or product to any actual or prospective customer or client of HK within a 200-mile radius of HK's corporate office locations;

iii) Enjoining further violations of the Agreement;

iv) Enjoining Cassidy from using HK's trade secret materials;

v) Requiring disgorgement of all profits earned by Cassidy from HK's current or potential customers or clients;

vi) Requiring Cassidy to destroy all HK trade secrets and related information;

vii) Requiring Cassidy to return all HK property;

viii) Awarding HK the costs and reasonable attorneys' fees incurred in this action; and

ix) Awarding all other relief as the Court deems appropriate.

Dated this 29th day of January, 2021.

Respectfully submitted,

BELIN McCORMICK, P.C.

By *[signature]*
   Michael R. Reck         *Lead counsel*
   Matthew D. Callanan
666 Walnut Street, Suite 2000
Des Moines, IA  50309-3989
Telephone: (515) 283-4645
Facsimile: (515) 558-0645
E-mail:  mrreck@belinmccormick.com;
mdcallanan@belinmccormick.com

ATTORNEYS FOR PLAINTIFF

(3710255.1)